## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**DONOVAN R. TAPLETTE**

**CIVIL ACTION**

**VERSUS**

**NO. 18-853-EWD (CONSENT)**

**JAMES M. LEBLANC, ET AL.**

### RULING AND ORDER

This case involves the claims of Donovan Taplette ("Plaintiff") that correctional officers failed to protect him from attack by another inmate on August 29, 2017, and subjected him to excessive force on September 1, 2017, while he was housed at Elayn Hunt Correctional Center ("Elayn Hunt"). The only remaining defendant, James Craig White ("White"), who was a correctional officer at Elayn Hunt during the relevant times, has filed a Motion for Summary Judgment ("MSJ")[1] seeking dismissal of all remaining claims against him. Plaintiff opposes the motion,[2] and White has filed a reply memorandum.[3] Oral argument is not necessary. After carefully considering the law, the facts and evidence in the record, and the submissions of the parties,[4] White's MSJ will be denied as fact issues and credibility determinations preclude summary judgment on Plaintiff's claims against him.

I.    **BACKGROUND**

A.    **Summary of Plaintiff's Claims**

On August 28, 2018, Plaintiff filed a Complaint[5] seeking monetary and punitive damages

---

[1] R. Doc. 64.

[2] R. Doc. 74.

[3] R. Doc. 77.

[4] Regardless of whether an exhibit is specifically cited in this Ruling, the Court has reviewed and considered all exhibits filed by the parties, including affidavits/declarations and attachments; videos; medical records; and other documents filed in the record, either manually or through the Court's CM/ECF system.

[5] R. Doc. 1. Plaintiff later filed a First Supplemental and Amending Complaint on August 14, 2019. R. Doc. 48. The claims asserted against White did not change; however, Plaintiff attempted to add Unknown Conrad and Charles E. Thomas, III as defendants in place of "JD1 and JD2," respectively. *Id.* On September 4, 2020, the Court ordered Plaintiff to appear by video and show cause as to why his claims against Unknown Conrad and Charles Thomas, III

1

stemming from an alleged incident where correctional officers failed to protect him from attack by another inmate on August 29, 2017 and/or alleged incident of excessive force while housed as an inmate at Elayn Hunt on September 1, 2017.[6] In his Complaint, Plaintiff named as defendants: (1) Secretary LeBlanc "in his official capacity as Secretary of the Louisiana Department of Public Safety and Corrections;" (2) Warden Hooper "individually and in his official capacity as a Warden" of Elayn Hunt; (3) White "individually and in his official capacity as a Corrections Officer" at Elayn Hunt; and (4) two unknown Corrections Officers – referred to as John Does 1 and 2 or "JD1" and "JD2" – in their individual and official capacities.[7]

On October 29, 2018, Secretary LeBlanc, Warden Hooper, and White (collectively, "Original Defendants") filed a Motion to Dismiss.[8] Original Defendants contended that Plaintiff's claims against them in their official capacities seeking monetary damages are barred by the Eleventh Amendment and subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(1), that Plaintiff fails to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) against Secretary LeBlanc and Warden Hooper under a theory of *respondeat superior* or vicarious liability, and that White is entitled to qualified immunity. Plaintiff did not oppose the motion. The Court granted Original Defendants' Motion to Dismiss in part and denied it in part. Specifically, Plaintiff's official capacity claims

---

should not be dismissed for failure to timely serve. R. Doc. 55. Plaintiff appeared, through counsel, and provided an explanation for his failure to serve, which was accepted. R. Doc. 58. Plaintiff was ordered to "file proper service information into the record as to Defendants Unknown Conrad and Charles Thomas by no later than September 30, 2020." *Id*. The Report and Order from the September 10, 2020 show cause hearing specifically advised that, "**Failure to timely comply with the requirements of this Order may result in dismissal of Plaintiff's claims against Unknown Conrad and Charles Thomas without further notice**." R. Doc. 58, p. 1 (emphasis in original). Plaintiff did not timely file proper service information as to those defendants, nor has he filed any service information as to those defendants to date. Accordingly, Plaintiff's claims against Defendants Unknown Conrad and Charles Thomas, III, will be dismissed on the Court's own motion under Fed. R. Civ. Proc. 4 and Local Civil Rule 41 due to Plaintiff's failure to prosecute and failure to timely serve.

[6] While the Complaint alleges that "this is a claim for damages brought pursuant to 42 U.S.C. § 1983, and the Fourth, Sixth, and Fourteenth Amendments to the Constitution of the United States," R. Doc. 1, ¶ 1, Plaintiff alleges that his damages stem from the unconstitutional use of excessive force and failure to intervene, claims that are generally understood to invoke Plaintiff's right under the Eighth Amendment to be free from cruel and unusual punishment.

[7] R. Doc. 1, ¶ 2.

[8] R. Doc. 22.  Original Defendants noted that Plaintiff also named JD1 and JD2, but that these individuals had not been identified, it was not clear whether these individuals had been properly served, and that counsel for Original Defendants "is not making an appearance for any defendant not properly served."  R. Doc. 22, p. 1, n. 1.

against the Original Defendants were dismissed pursuant Fed. R. Civ. P. 12(b)(1); Plaintiff's individual capacity claims against Warden Hooper based on supervisory liability were dismissed pursuant to Fed. R. Civ. P. 12(b)(6); and Plaintiff's individual capacity claims against White for conspiracy were dismissed pursuant to Fed. R. Civ. P. 12(b)(6).[9] However, because Plaintiff alleged sufficient facts to overcome qualified immunity as to White, the Court denied the Motion to Dismiss as to Plaintiff's individual capacity claims against White for excessive force and failure to intervene.[10] These claims against White are the only claims remaining in this action, with the *sua sponte* dismissal of the unserved defendants (Unknown Conrad and Charles Thomas, III) in this Ruling.

White filed the MSJ[11] with supporting evidence. Plaintiff filed an opposition memorandum,[12] along with his Declaration. White then filed a reply memorandum.[13]

### B.    Factual Background[14]

Plaintiff is an inmate, who was sentenced to the custody of the Louisiana Department of Safety and Corrections ("DPSC").[15] At all times relevant to this suit, Plaintiff was housed in Cell #5 of Beaver 5, D-Tier at Elayn Hunt.[16] On August 29, 2017, Plaintiff was involved in an altercation with his cell mate, which Plaintiff claims was instigated by White.[17] During that altercation, Plaintiff's cell mate bit Plaintiff above the right eye. Though Plaintiff claims he

---

[9] R. Doc. 29.

[10] *Id*.

[11] R. Doc. 64.

[12] R. Doc. 74.

[13] R. Doc. 77.

[14] There are few undisputed facts, as the parties offer vastly different versions of the events—really, minutes—surrounding the September 1 incident involving Plaintiff and White, which is the focus of the MSJ.

[15] R. Doc. 64-2, at ¶ 1. *See also* R. Doc. 1, at ¶¶ 3-4.

[16] R. Doc. 64-2, at ¶¶ 3-7. *See also* R. Doc. 1, at ¶¶ 3-4. White contends that Plaintiff was housed in Cell #5, while Plaintiff contends that he was housed in Cell #6. The Court uses Cell #5, as that is the information contained in White's Statement of Uncontested Facts, which are deemed admitted. Regardless, the number of the cell in which Plaintiff was housed is not material.

[17] R. Doc. 1, ¶ 6 ("That despite Inmate Harris' obvious agitation and excitement, Sgt. White continued to badger and cajole Inmate Harris to the point of aggravation and aggression, causing inmate Harris to attack and fight with [Plaintiff] eventually biting [Plaintiff] on the face.")

repeatedly sought medical treatment but was denied, Plaintiff's medical records show that he was seen on August 29, 2017 by prison medical professionals and that the bite was cleaned and bandaged.[18]

A few days later, on September 1, 2017, Plaintiff was in the C&D Lobby of Beaver 5 around 2:03 p.m.[19] The parties agree that Plaintiff was in a "full set of restraints."[20] Plaintiff claims he refused to allow a new inmate into his cell because that inmate had "mental issues" similar to the prior cellmate and Plaintiff "feared a repeat of the [August 29, 2017] attack."[21] White was summoned.[22] Plaintiff says he attempted "to explain his valid fears to [White]" to no avail.[23] After Plaintiff's unsuccessful pleas, the parties agree that White verbally ordered Plaintiff to return to his cell, but Plaintiff refused.[24] They also agree that White gave Plaintiff additional verbal orders to enter the shower on Beaver 5, which Plaintiff again refused.[25]

The parties' accounts diverge again here. Plaintiff claims that, despite being in "full correctional restraints, including leg chains, waist chains, and black box hand restraints," White and several other correctional officers "forcefully" threw him to the ground.[26] Plaintiff alleges that White "plac[ed] his knee in the side on [Plaintiff's] face, with his full force and weight, while [other correctional officers] continued to beat [Plaintiff]."[27] Plaintiff states that Defendants' actions amounted to an "unnecessary and excessive beating,"[28] and that he requested medical attention, which was not provided.[29]

---

[18] R. Doc. 64-8, p. 3.
[19] R. Doc. 64-2, at ¶ 25; R. Doc. 64-10 (September 1, 2017 Lobby Camera Footage).
[20] R. Doc. 64-2, at ¶ 25: R. Doc. 64-10 (September 1, 2017 Lobby Camera Footage). *See also* R. Doc. 1, ¶ 13.
[21] R. Doc. 1, ¶¶ 9-12. *See also* R. Doc. 74, p. 2.
[22] *Id*.
[23] *Id*.
[24] R. Doc. 64-2, at ¶ 26; R. Doc. 1, ¶ 12.
[25] R. Doc. 64-2, at ¶ 27; R. Doc. 1, ¶ 12.
[26] R. Doc. 1, ¶¶ 12-13. *See also* R. Doc. 74, pp. 2-3.
[27] *Id*.
[28] R. Doc. 74-1, ¶¶ 7-8.
[29] *Id*. *See also* R. Doc. 1, ¶ 14.

Conversely, White contends he "attempted to escort Plaintiff to the shower" because Plaintiff "behaved in a passive aggressive manner to [White] giving him orders to get in the shower."[30] White then claims that Plaintiff "jerked away from [White] refusing to comply with the orders given to him."[31] Because of this, White says that he, with the help of two other correctional officers, was "able to bring Plaintiff to the ground to restrain Plaintiff, gain compliance, and regain control."[32] White unequivocally states that he "did not use excessive force" on Plaintiff, and that he "did not see [the other correctional officers] use excessive force" on Plaintiff.[33] Rather, White contends that he followed applicable institutional policy—Institutional Policy No. 300-A01—which allows the "use of Soft Empty Hand Techniques when an offender does not comply with verbal and physical attempts at control," and allows the "use of Hard Empty Hand Techniques when an offender attempts to prevent an officer from gaining control of the offender."[34] White also alleges that, at some point during this encounter, Plaintiff "threatened that he would harm [White] when he got out of restraints."[35] White further claims that after Plaintiff was "under control," he was escorted to "ATU where a medical professional saw him," even though Plaintiff "did not suffer an injury as a result of this incident."[36]

Further complicating matters are the three videos showing portions of the August 29 and the September 1 incidents involving Plaintiff and White.[37] Both sides rely on these videos, each claiming the videos "clearly" show that his version of events is correct. These videos do not capture

---

[30] R. Doc. 64-2, at ¶¶ 28-29.

[31] *Id*. at ¶ 30.

[32] *Id*. at ¶ 31.

[33] R. Doc. 64-4, ¶¶ 13-16.

[34] R. Doc. 64-2, at ¶¶ 32-33. *See also* R. Doc. 64-4, ¶ 17.

[35] R. Doc. 64-4, ¶ 18.

[36] R. Doc. 64-2, at ¶¶ 36-37. Plaintiff's medical records, which are attached to the Motion and unobjected to, show that he was seen by medical personnel at 2:15 p.m. on September 1, 2017. R. Doc. 64-8, p. 2. The signature of the individual who screened Plaintiff's request and completed the Health Care Request Form is illegible. *Id*

[37] *See, e.g.*, videos manually filed as Exhibits 64-5 (August 29, 2017 Bodycam Footage), 64-10 (September 1, 2017 Lobby Camera Footage), and 64-12 (September 1, 2017 Escort Footage).

the entire incidents from start to finish or show Plaintiff and White in their entirety during the critical moments of these encounters.

## II.    LAW AND ANALYSIS

### A.    Preliminary Statement

Preliminarily, the Court notes that Plaintiff did not fully comply with Local Civil Rule 56. In addition to supporting memoranda, Local Civil Rule 56 requires a Motion for Summary Judgment to "be accompanied by a separate, short, and concise statement of the material facts" that the movant contends are undisputed. A party opposing summary judgment must also include, along with its opposition, "a separate, short and concise statement of the material facts as to which the opponent contends there exists a genuine issue to be tried."[38] The opposing party's statement "shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule.[39]

Here, White filed a Statement of Undisputed Facts.[40] While Plaintiff filed his own Statement of Genuine Issues of Material Fact, Plaintiff's statement does not comply with Local Civil Rule 56(c) because it does not "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts."[41]  Nor does it comply in full with Local Civil Rule 56(f), which provides that "[a]n assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion."

---

[38] Local Civil Rule 56.
[39] Local Civil Rule 56(c).
[40] R. Doc. 64-2
[41] *See* R. Doc. 74-2.

White's Statement of Undisputed Material Facts are deemed admitted under Local Civil Rule 56(f) because they are properly supported by record citations and are not properly controverted by Plaintiff.[42] However, the Court is not required to accept legal conclusions couched as undisputed material facts, simply because they are "deemed admitted" by operation of Local Civil Rule 56. Additionally, despite the deemed admission of White's statement of material facts, because White relies heavily on the video footage of the August 29 and September 1 incidents to establish these facts, and because the video of the incidents is inconclusive, summary judgment is denied as explained below.

### B.    Summary Judgment Standard

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[43] "A 'material' fact is one that might affect the outcome of the suit under governing law,' and a fact issue is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."[44] A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no genuine issue of material fact.[45] The court must deny a motion for summary judgment if the movant fails to meet his burden of showing that there is no genuine issue of material fact.[46]

---

[42] Local Civil 56(f) states, "Facts contained in support or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment."

[43] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

[44] *McCullough v. Wright*, 824 Fed.Appx. 281, 284 (5th Cir. Sept. 9, 2020), quoting *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (some internal quotations omitted).

[45] *Celotex Corp.*, 477 U.S. at 322.

[46] *Turbacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).

If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.[47] This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.[48] Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[49] Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party.[50]

In resolving a motion for summary judgment, the court must review the facts and inferences in the light most favorable to the non-moving party, and the court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.[51]

## C.    The Parties' Arguments

### 1.    White's Argument and Evidence

White argues that Plaintiff's claims of excessive force should be dismissed because they are "unfounded due to the allowance of force to be used to maintain order and safety at Elayn Hunt," as "shown by the attached exhibits and referenced law."[52] According to White, application of the *Hudson* factors shows that the force he used on Plaintiff was only the amount necessary and was not excessive.[53] Specifically, White contends: (1) that Plaintiff has "failed to assert any

---

[47] *Anderson*, 477 U.S. at 248.
[48] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[49] *Celotex Corp.*, 477 U.S. at 323.
[50] *Little*, 37 F.3d at 1075.
[51] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).
[52] R. Doc. 64-1, p. 15.
[53] R. Doc. 64-1, pp. 11-15, citing to *Hudson v. McMillian,* 503 U.S. 1, 7 (1992).

physical injury" and "it is obvious that Plaintiff did not suffer an injury from the September 1, 2017," as the "only injury" noted by medical personnel—a "bite around his right eye"—was the result of the August 29 altercation between Plaintiff and Harris; (2) that it is "evident" from a review of the video of the September 1, 2017, considered in light of Elayn Hunt's Use of Force Policy, that White "need[ed]…to use force on Plaintiff by bringing him to the ground" because Plaintiff "refused" orders from White and other correctional officers and "jerked away" from White while in the Beaver 5 Lobby "with numerous other offenders, corrections officers, and other staff while food is being served," and it "could have escalated and become dangerous and unsafe" if White did not use force and "regain control as quickly as possible"; (3) that, based on Plaintiff's actions in refusing orders and jerking away from White, under Elayn Hunt's Use of Force Policy, White was authorized to take Plaintiff to the ground and use chemical agents, electrical devices, and/or empty hand techniques to regain control, but White only "brought Plaintiff to the ground with the assistance of fellow corrections officers"; (4) that, despite being restrained, Plaintiff "posed a legitimate threat to the safety and order of the institution" because he "could have harmed himself, another offender, or any of the officers present"; and (5) that White attempted to temper the severity of the response by giving Plaintiff direct verbal orders, which Plaintiff refused.[54]

White supports his Motion with evidence, including (1) affidavits of White and another correctional officer, Breanna Conrad, and documents attached to those affidavits relating to the August 29 and September 1 incidents;[55] (2) video footage of the September 1 incident;[56] (3)

---

[54] R. Doc. 64-1, pp. 9-15.
[55] *See* R. Doc. 64-4 (Affidavit of Craig White with the following attachments: (a) September 1, 2017 Unusual Occurrence Report – Craig White and (b) September 1, 2017 Disciplinary Report – Craig White), R. Doc. 64-11 (Affidavit of Breanna Conrad with the following attachments: (a) September 1, 2017 Unusual Occurrence Report – Breanna Conrad and (b) September 1, 2017 Disciplinary Report – Breanna Conrad)., R. Doc. 64-5 (Bodycam footage of the August 29, 2017 incident), R. Doc. 64-6 (August 29, 2017 Unusual Occurrence Report – John Wells), R. Doc.
[56] *See* R. Docs. 64-10 (September 1, 2017 Lobby Camera Footage); R. Doc. 64-12 (September 1, 2017 Escort Footage). Both videos were conventionally filed with the Clerk of Court. R. Doc. 85.

Plaintiff's medical records;[57] (4) body camera video footage of the August 29 incident;[58] and (5) Elayn Hunt Institutional Policy No. 300-A-01(Use of Force) and Administrative Remedy Procedure No. EHCC-2017-629.[59]

### 2.    Plaintiff's Argument and Evidence

In opposition, Plaintiff contends that the "evidence of the significant injury to the Plaintiff is clear and unambiguous."[60] Plaintiff also argues that White's use of force was not reasonable because Plaintiff was in "total body restraints and yet received an extreme beating and significant injury at the hands of White."[61] Plaintiff further contends that White's position that "the officers were justified in administering this beating to Plaintiff" is pretext.[62] Plaintiff also argues that the video of the September 1 incident supports his version of the events as much as it supports White's.[63]

According to Plaintiff, several genuine issues of material fact, including whether "there was any reasonable cause for the use of force on Plaintiff," whether Plaintiff "resisted" White's "commands and orders," and whether the "force used was excessive…under the circumstances,"[64] preclude summary judgment.[65] Plaintiff suggests that these factual disputes are "more appropriately resolved at a trial on the merits" and not on summary judgment, where the court must view the evidence in the light most favorable to Plaintiff as the non-movant.[66]

---

[57] R. Doc. 64-8.
[58] R. Doc. 64-5.
[59] R. Doc. 64-14; R. Doc. 64-15.
[60] R. Doc. 74 at p. 5. The only evidence supporting Plaintiff's opposition is a signed Declaration of Plaintiff. *See* R. Doc. 74-1.
[61] *Id*.
[62] *Id*. at pp. 3-5.
[63] *Id*. at p. 5
[64] R. Doc. 74-2.
[65] R. Doc. 74, pp. 3-6.
[66] *Id*.

### D.    Application to Plaintiff's Claims

#### 1.    Failure to Protect

Because Plaintiff says his August 29 attack by another inmate was provoked by White, Plaintiff is alleging a claim of failure to protect. "Deliberate indifference" is the standard applied in evaluating a failure to protect claim. This term has been defined as including an element of "subjective recklessness" as used in the criminal law.[67] An official acts with the requisite deliberate indifference if he is aware of an "excessive risk to inmate…safety" and disregards that risk.[68] A prison official may be held liable under the Eighth Amendment for acting with deliberate indifference to an inmate's health or safety only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to avoid it.[69] In other words, for there to be liability in connection with this cause of action, there must exist an intent on the part of security officers to cause the plaintiff harm or at least a conscious or callous indifference to the plaintiff's right to be protected from such harm.[70] The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference.[71] Mere negligence or "failure to alleviate a significant risk that [the official] should have perceived but did not" are insufficient to establish a failure to protect claim.[72] Deliberate indifference requires a level of awareness of a specific risk based upon specific information, such that general knowledge of general dangerousness or the like is not enough to support a failure to protect claim.[73]

---

[67] *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

[68] *Id.*

[69] *Id.* at 847.

[70] *Johnston v. Lucas*, 786 F.2d 1254, 1259 (1986).

[71] *Farmer*, 511 U.S. at 837.

[72] *Id.* at 838. *See also, Domino v. Texas Dept. of Crim. Jus.*, 239 F.3d 752, 756 (5th Cir. 2001), citing *Farmer*, 511 U.S. at 838.

[73] *Walker v. Davis*, No. 17-166, 2019 WL 2465298, at *8 (E.D. Tex. Jan. 10, 2019). *See also Van Williams v. Samaniego*, No. 05-491, 2007 WL 9701460, at *3 (W.D. Tex. Feb. 22, 2007) (citation omitted) ("General knowledge

While the majority of the MSJ is related to the September 1 incident, White also argues, with regard to the August 29 incident in which Plaintiff was bitten over his right eye by another inmate, that Plaintiff "failed to show that he suffered a physical injury."[74] Damages are not available to a plaintiff for a failure to protect claim if he has suffered no more than a *de minimis* injury. In other words, a showing of more than a *de minimis* injury is required to prove a constitutional violation based on failure to protect.[75] Though there is no bright line for what amounts to a greater than *de minimis* injury, courts have taken a "common-sense" approach in determining whether an injury is sufficiently severe to meet the threshold.[76] Generally, "scrapes, scratches, cuts, abrasions, bruises, pulled muscles, back aches, leg aches, etc." do not pass the *de minimis* threshold.[77] Similarly, a sore, bruised ear lasting for three days is *de minimis*.[78]

An injury that passes the *de minimis* threshold must be the kind of physical injury that is "an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks."[79] "Injuries treatable at home and with over-the-counter drugs, heating pads, rest, etc." are also not more than *de minimis*, so as to permit recovery of damages for a failure to protect claim.[80]

---

about another inmate's violent tendencies, without more specific information about the risk, does not rise to the requisite level of awareness necessary for a finding of deliberate indifference.").

[74] This argument is contained in White's analysis of the *Hudson* factors, which relate to an evaluation of excessive force, not to a failure to protect claim. *See* R. Doc. 64-1, p. 12. White does not seek dismissal of Plaintiff's claims for failure to adequately establish the other elements of his failure to protect claim. He only references that Plaintiff has not established a sufficient injury.

[75] *See Spivey v. Wilson,* 850 Fed.Appx. 902, 903 (5th Cir. 2021) (affirming summary dismissal of failure to protect claim where the plaintiff failed to produce evidence of more than a *de minimis* injury).

[76] *Luong v. Hatt,* 979 F.Supp. 481, 486 (N.D. Tex. Sept. 11, 1997).

[77] *Id. See also, Gilliam v. McMillin,* No. 09-99, 2012 WL 845185, at *2 (S.D. Miss. Mar. 12, 2012) ("vague statement as to injury is insufficient to surmount the *de minimis* hurdle"); *Burns v. Morgan,* No. 05-4222, 2006 WL 237018, at *4 (S.D. Tex. Jan. 30, 2006) (head, neck, and shoulder pain treated with ice pack and ibuprofen was not more than *de minimis* injury); *Herron v. Patrolman No. 1,* 111 Fed.Appx. 710, 713 (5th Cir. 2004) (a temporary increase in pain is insufficient to surpass the *de minimis* threshold).

[78] *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997).

[79] *Id.*

[80] *Id.*

Here, Plaintiff does not parse his damage claims between the August 29 and September 1 incidents; however, his medical records produced do not support White's argument that Plaintiff sustained no injury from the August 29 incident, nor do they support Plaintiff's claim that he requested medical assistance for the human bite, but was not afforded medical assistance.[81] Instead, the related medical records show that Plaintiff was seen on August 29, 2017 at 3:30 p.m. for a "bite over right eye by another offender," and that the bite was cleaned and bandaged.[82] Additionally, the medical record from September 1, 2017 shows that Plaintiff continued to complain about the bite over his right eye. Although that record indicates "no signs of infection 0 swelling 0 bleeding," it also notes that "Pt [patient] will be placed on call out on Monday" to see a doctor.[83]

While it is a close question, there is a material issue of fact as to whether Plaintiff suffered more than *de minimis* injury due to White's alleged failure to protect related to the August 29 incident. The evidence provided shows that Plaintiff sought medical treatment for the bite at least twice and the medical records indicate that Plaintiff was going to be seen by a doctor. It cannot be said as a matter of law that a human bite requiring medical treatment multiple times is a *de minimis* injury. Accordingly, summary judgment as to this claim will be denied.

### 2. *Excessive Force*

It is axiomatic that corrections officers are faced with myriad situations where they must exercise discretion, including situations where they must choose whether to exercise force against a prisoner. When force is used, a corrections officer must also exercise discretion to determine the appropriate amount of force.[84] Force is considered excessive and violates the Eighth Amendment

---

[81] *See* R. Doc. 74-1, ¶5.
[82] R. Doc. 64-8, p. 3.
[83] R. Doc. 64-8, p. 2.
[84] *See, e.g., Henry v. North Texas State Hospital*, No. 12-cv-198, 2013 WL 3870292, at *3 (N.D. Tex. July 9, 2013) ("Qualified immunity is available to public officials such as prison guards and state hospital employees who must exercise discretion.").

of the United States Constitution if it is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline.[85] "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."[86] Factors to be considered in determining whether an alleged use of force has been excessive include the extent of injury sustained, if any, the need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response.[87] Application of these factors is inconclusive because of what the heavily-relied-on videos show and do not show and the credibility determinations that would be required to resolve the parties' disputes over genuine issues of material fact.

### a.    Extent of Injury

While the "core judicial inquiry" in an Eighth Amendment excessive force allegation is the nature of the force used, "the extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation."[88] The Supreme Court, in *Wilkin*s, made clear that the critical question for an excessive force claim is not "whether a certain quantum of injury was sustained, but rather 'whether the force was applied in a good-faith effort to maintain and restore discipline, or maliciously and sadistically to cause harm.'"[89]

---

[85] *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010), quoting *Hudson v. McMillian,* 503 U.S. 1, 7 (1992).
[86] *Wilkins*, 559 U.S. at 38.
[87] *Hudson*, 503 U.S. at 7.
[88] *Wilkins*, 559 U.S. at 37, quoting *Hudson*, 503 U.S. at 7.
[89] *Wilkins*, 559 U.S. at 37.  *See also McGuffy v. Blackwell*, 784 Fed.Appx. 240, 243 (5th Cir. 2019) (reversing frivolous dismissal of excessive force claim based solely on the fact that the plaintiff suffered only a bruise, relying on *Wilkins*); *Harris v. Smith*, 482 Fed.Appx. 929, 920 (5th Cir. 2012) (noting that *Wilkins* "rejected the 'de minimis injury' standard in excessive force cases).

Here, Plaintiff alleges that, as a result of the force used by White during the September 1 incident, he sustained injuries, including: (a) "embarrassment, humiliation, and violation of his civil rights; (b) physical injuries to his person including bruises, contusions, severe acute exterior frontal lobe swelling…; (c) symptoms indicative of Post Traumatic Stress Disorder [sic]; (d) panic attacks; (e) exaggerated startle responses to the presence of Correction Officers; [and] (f) significant impairment of social functioning."[90] Plaintiff's medical records also show that he was treated by medical personnel after the September 1 incident.[91] Plaintiff claims this "evidence of the significant injury to [him] is clear and unambiguous."[92]

White contends that Plaintiff did not suffer any injuries as a result of the September 1, 2017 incident, pointing to Plaintiff's medical records.[93] Plaintiff's medical record, dated September 1, 2017, is the only uncontroverted, competent summary judgment evidence in the record regarding Plaintiff's injuries.[94] That medical record mentions only two "injuries"—a bruise under Plaintiff's right eye and the bite Plaintiff sustained during the August 29 incident.[95] Notably, the bruise is the only injury mentioned in this record that could have arguably been suffered as a result of the September 1 incident, as the bite happened earlier. Although it is not clear whether Plaintiff claimed (or is claiming) he suffered a bruise as a result of the September 1 incident with White, Conrad, and Thomas,[96] the Court will assume so, construing the facts and inferences in the light most favorable to the non-moving party.

The extent of the injury in this case weighs in favor of a finding that the force applied by White was not excessive. At best, Plaintiff's physical injury from the September 1 incident

---

[90] R. Doc. 1, ¶ 18.
[91] R. Doc. 64-8, p. 3.
[92] R. Doc. 74, pp. 5.
[93] R. Doc. 64-1, pp. 12-13; R. Doc. 64-8.
[94] R. Doc. 64-8, p. 2.
[95] *Id*.
[96] The September 1 medical record relates the assessment to "Pt says he was 'bitten by another inmate' on side of face approx. 3 days ago."  R. Doc. 64-8, p. 2.

amounted to a bruise under his eye. Such a minor injury would not be in keeping with Plaintiff's allegations that he was excessively beaten during this incident, however, because (1) the extent of injury is only one factor to be considered in determining whether White's use of force violated Plaintiff's Eighth Amendment rights, and (2) the other factors are inconclusive, summary judgment as to this claim will be denied.

### b.    The Remaining *Hudson* Factors

The remaining *Hudson* factors[97] are inconclusive and cannot be properly assessed on summary judgment because the video evidence heavily relied on by White to support his version of what happened during the September 1 incident does not meet the standard established by the Supreme Court in *Scott v. Harris*, because that footage does not completely discredit Plaintiff's versions of events such that no reasonable jury could believe him.[98] Relatedly, because the video footage does not show all of Plaintiff or White (or contain any audio) during the crucial moments of the September 1 incident,[99] resolution of critical issues, including analysis of the *Hudson*

---

[97] The remaining *Hudson* factors are the need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7.

[98] *See Scott v. Harris*, 550 U.S. 372 (2007). In *Scott*, the Supreme Court explained that video evidence can establish the propriety of summary judgment when the non-movant's version of an event was "so utterly discredited" by video evidence "that no reasonable jury could have believed him," such that the court "should have viewed the facts in the light depicted by the videotape." *Id*. at 380. *But compare, Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 729-30 (5th Cir. 2018) (discussing and distinguishing *Scott* because "the videos [in the instant case] do not meet that difficult standard…[and] the videos do not favor one account over the other and do not provide the clarity needed to resolve the factual dispute presented by the parties' conflicting accounts."). The Fifth Circuit has described the *Scott* standard as follows: "a court should not discount the nonmoving party's story unless the video evidence provides so much clarity that a reasonable jury could not believe his account." *Darden*, 880 F.3d at 730 (citing *Scott*, 550 U.S. at 380); *see also Ramirez v. Martinez*, 716 F.3d 369, 375 (5th Cir. 2013) (finding that video evidence did not meet the *Scott* standard because (1) the "video does not so blatantly contradict the version of events told by [plaintiff] that no reasonable jury could believe his version and (2) the "contents of the video are too uncertain to discount [plaintiff's] version of events…"); *Hegeman v. Harrison*, No. 18-613, 2019 WL 1277523, at *8-9 (E.D. La. Mar. 20, 2019) (finding that inconclusive video footage did not clearly disprove the plaintiff's account of the incident.).

[99] For example, the lobby camera appears to have captured the entire altercation between Plaintiff and White. *See* R. Doc. 64-10. Although there is five minutes of footage (but no audio), the first two minutes and thirty-five seconds show the lead up to the physical altercation between Plaintiff and White. *Id*. at 0:00 – 2:35. Plaintiff is pacing back and forth (sometimes off camera) in the lobby, and he appears to be talking to and/or at the other individuals in the lobby, including White. *Id*. However, the correctional officers and other offenders do not appear to be bothered or threatened by Plaintiff. To the contrary, everyone seems to be paying Plaintiff little attention, until White walks toward Plaintiff and makes a gesture with his left hand toward an open door. *Id.* at 2:35. Three to four seconds after the arm

factors, requires weighing evidence and credibility determinations—*i.e.,* whether you believe Plaintiff more than White or *vice versa*.[100] Credibility determinations and weighing evidence are inappropriate at the summary judgment stage, and the MSJ could be denied on this ground alone. However, considering the heavy reliance on the video footage of the September 1 incident, the Court will briefly discuss each remaining *Hudson* factor.

Regarding the need for the application of force, the parties do not dispute that the event began with words. They also do not dispute that White gave Plaintiff multiple, verbal orders, which were refused by Plaintiff.[101] While courts have found that force can be used to restore order where an inmate ignores an officer's verbal commands,[102] the force applied by White in subduing Plaintiff could nonetheless be excessive—*i.e.*, more than necessary—depending on the circumstances. Despite the parties' divergent views of this encounter,[103] what is not disputed is

---

gesture, White grabs Plaintiff by his clothes and appears to pull him toward the open door. *Id*. at 2:38-2:39. At this point, White is behind Plaintiff. He is still grabbing Plaintiff's clothes and appears to be pushing Plaintiff toward the door along with the assistance of JD1 and JD2. Less than two seconds later, at the two minute and forty-one second mark, Plaintiff is on the floor of the lobby, but only partially visible on the video footage. *Id*. at 2:41. White and the other correctional officers are touching and/or standing over Plaintiff. At the two minute and forty-two second mark, Plaintiff is not visible at all on the video footage, while White and the other correctional officers are only partially visible. *Id*. at 2:42. Critically, White and the other officers' hands and feet are not visible. Plaintiff remains off camera and White remains only partially visible from two minute and forty-two second mark until the four minute and seventeen second mark, when Plaintiff and White are back on their feet and White is still grasping the left shoulder area of Plaintiff's clothing. *Id*. at 2:42-4:17. Over the course of the next twelve seconds, White escorts Plaintiff out of the lobby through a different door than the one White was initially gesturing towards. *Id*. at 4:17-4:29. Neither Plaintiff nor White are shown in the last thirty-one seconds of the video. *Id*. at 4:29-5:00. The other videos show Plaintiff and White at non-critical times and, even then, for only very short periods. *See* R. Doc. 64-5; R. Doc. 64-12.

[100] For example, Plaintiff claims that White forcefully threw him to the ground, while White says Plaintiff "jerked away" from him. This is a disputed issue of material fact, that the video does not resolve. Indeed, one reasonable juror could watch the video and conclude that Plaintiff was thrown to the ground, while another reasonable juror watching the same video could conclude that Plaintiff jerked away from White and was justifiably taken to the ground. How a reasonable juror views the video may also rest on which witness(es) that juror finds more credible.

[101] R. Doc. 64-2, at ¶¶ 26-27; R. Doc. 1, ¶ 12.

[102] *See Preston v. Hicks*, 721 Fed.Appx. 342, 345 (5th Cir. 2018).

[103] Plaintiff claims he was attempting to explain why he did not want a new cellmate to White. He also claims that White ordered him to his cell several times, but Plaintiff refused those orders. Plaintiff further claims that White "forcefully" threw him to the ground at this point and then subjected him to an "unjustified, unprovoked" and "extreme beating." R. Doc. 1, ¶¶ 12, 17; R. Doc. 74, p. 5. Conversely, White claims that he attempted to escort Plaintiff to his cell after Plaintiff refused several orders to return on his own. R. Doc. 64-1, pp. 13-14. According to White, Plaintiff "jerked away" from him and acted in a recalcitrant manner, so White took Plaintiff to the ground using only the amount of force "proportional to Plaintiff's actions," as well as reasonable and necessary under the circumstances and allowed under Elayn Hunt's Use of Force Policy. *Id*. *See also* R. Doc. 64-14.

that Plaintiff was in full correctional restraints during the entirety of the September 1 incident. Based on the undisputed evidence in the record, Plaintiff disregarded orders from White to return to his cell or go to the shower cell. However, because Plaintiff was also in full correctional restraints at this time, a reasonable jury could find that force was not necessary to subdue Plaintiff in this particular instance and manner.

Similarly, the video footage does not conclusively establish the "relationship between the need for force and the amount used." The parties' offer drastically different views on the need for force and the amount used,[104] and genuine issues of material fact exist as to this factor for the same reasons as the need for force. Additionally, while White claims he only used force that was proportional to Plaintiff's actions, Plaintiff claims the force was excessive because he was beaten. The lobby footage does not show what level of force was used on Plaintiff after he was taken to the ground, so a full analysis of this factor requires a credibility determination, which is not appropriate at this juncture.

As to the threat perceived by officers, the "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer. Although White argues (1) that Plaintiff "posed a legitimate threat to the safety and order of the institution" because he "could have harmed himself, another offender, or any of the officers present," and (2) that he posed a threat because he was "recalcitrant towards the orders of officers as surveillance footage shows,"[105] this argument is unavailing. Although White claims Plaintiff "threatened that he would harm [White] when he got out of restraints,"[106] a reasonable juror could still find White's use of force excessive under the circumstances as Plaintiff *was* restrained. In other words, a threat of harm that cannot be acted

---

[104] *See* fn. 105, *supra*. Additionally, White claims that under the Elayn Hunt Use of Force policy, he could have used "chemical agents, electrical devices, or hard empty techniques to bring Plaintiff back into compliance" after Plaintiff "jerked away," but he elected to simply bring Plaintiff to the ground instead. *Id*.
[105] R. Doc. 64-1, pp. 14-15.
[106] R. Doc. 64-4, ¶ 18.

upon at the time may not be a reasonable basis to utilize force. Second, the video relied on by White appears to show that no other person in the lobby was particularly concerned, or felt threatened, by Plaintiff's actions before, during, or after the altercation. Indeed, a reasonable juror viewing the lobby footage could conclude that while agitated, Plaintiff, who was fully restrained, posed no threat to any correctional officer or other offender or to the safety of the institution. Considering the evidence and facts in a light most favorable to Plaintiff, a genuine issue of material fact exists as to whether a reasonable officer would perceive Plaintiff's actions on September 1, 2017 as threatening.

Lastly, the parties do not discuss the "efforts made to temper the severity of the force" factor in detail. Regardless, because the lobby footage does not fully show either Plaintiff or White after Plaintiff went to the ground, the Court cannot determine whether White made any effort to temper the severity of the force used once the altercation began. Whether White knelt on Plaintiff's face with his full weight, while other officers beat Plaintiff (which White denies), creates a fact issue that precludes summary judgment.

For these reasons, and without resorting to weighing evidence and making credibility determinations, resolution of the remaining *Hudson* factors is not possible at this juncture or on the competent summary judgment evidence currently before the Court.

### c.    *Waddleton v. Rodriguez* is Distinguishable[107]

Relying heavily on the Fifth Circuit's opinion in *Waddleton*, White argues that application of the *Hudson* factors to the facts of this case shows that "it is evident that the force used by [White] was not excessive, but was proportional in response to Plaintiff's actions and the force was used to maintain order and discipline."[108] However, as explained above, even if White is correct that

---

[107] 750 Fed.Appx. 248 (5th Cir. 2018).
[108] R. Doc. 64-1, pp. 9-10, 12.

some force was necessary given Plaintiff's admitted refusal to follow orders, it does not follow that any and all uses of force by White are automatically proportional to Plaintiff's actions and, thus, not excessive. Put differently, just because White was permitted to use some force on September 1, 2017, it does not mean that the force actually applied by White cannot be excessive under the circumstances. Further, *Waddleton* is distinguishable.

In *Waddleton*, the plaintiff, an inmate who was handcuffed and used a cane, used profanity, kicked open a door, and stated that he was "pissed off."[109] Correctional officers were ordered to place plaintiff against a wall. While being escorted to the wall, plaintiff "quickly" turned away from the wall and towards the officers, who subsequently placed him on the ground and restrained him."[110] The Fifth Circuit found that, because plaintiff "made a threatening movement [and] resisted restraint, [] the amount of force was not gratuitous, even though plaintiff was already restrained and physically handicapped.[111]

While *Waddleton* appears instructive, there are key factual distinctions between that case and this one. First, in *Waddleton*, the Fifth Circuit specifically states, "The video recording of the use of force is approximately twenty minutes long and *continually* captures the incident from Waddleton being escorted from the law library to his placement in a cell."[112] That is not the case with the video footage at issue here. Second, the correctional officers in *Waddleton* only took the plaintiff to the ground and restrained him after the plaintiff "quickly turn[ed] away from the wall and towards the officers."[113] Here, White claims that Plaintiff "jerked away" from—not towards— him, which could be perceived as less threatening then quickly turning toward an officer. Third, the video in *Waddleton* showed that the plaintiff was placed on a gurney with an officer holding

---

[109] 750 Fed.Appx. at 251.
[110] *Id*.
[111] *Id*. at 254.
[112] *Id*. at 251 (emphasis added). *See also id*. at 254 (noting that the "video captures the use of force in its entirety and there are no sudden jumps, breaks, or other indications that the video is altered").
[113] *Id*.

his feet but still "twice appear[ed] to resist the restraints…[and] attempt[ed] to strike an officer."[114]
The videos in this case do not show the entire altercation between Plaintiff and White, so the Court
cannot determine whether Plaintiff resisted or attempted to strike any of the corrections officers.
Notwithstanding that fact, White does not allege that Plaintiff attempted to strike him or any other
correctional officer.

Because *Waddleton* is distinguishable, White's reliance on that case does not change the
Court's analysis of the *Hudson* factors.[115]

## III. CONCLUSION

**IT IS ORDERED** that the Motion for Summary Judgment, filed by Defendant Craig
White, is **DENIED** as genuine issues of fact preclude resolution of Plaintiff's failure to protect,
failure to intervene, and excessive force claims against White.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Unknown Conrad and
Charles Thomas, III are **DISMISSED** on the Court's own motion pursuant to Fed. R. Civ. Proc. 4
and Local Rule 41. There is no service information in the record as to these defendants, despite
Plaintiff receiving additional time to serve them, nor have these defendants appeared, and Plaintiff
was on notice that these claims were subject to dismissal.

---

[114] *Id.*

[115] To the extent Plaintiff makes a failure to intervene claim against White related to the September 1 incident as to
the actions of JD1 and JD2, Plaintiff must show that White (1) knew that a fellow officer was violating Plaintiff's
constitutional rights, (2) had a reasonable opportunity to prevent the harm, and (3) chose not to act. *Whitley v. Hanna*,
726 F.3d 631 (5th Cir. 2013). Plaintiff alleges that White placed his knee on the side of Plaintiff's face with his full
force and weight, while JD1 [Conrad] and JD2 [Thomas] continued to beat Plaintiff. R. Doc. 1, ¶ 12. This is sufficient
to allege a failure to intervene claim against White as to the September 1 incident and White did not seek dismissal of
this claim. White's claim of qualified immunity is also denied at this juncture as it is based on his arguments that there
was no constitutional violation and/or that his actions were not objectively unreasonable in light of clearly established
law, relying on the videos, *Waddleton* and an analysis of the *Hudson* factors, which have been rejected as a sufficient
basis for summary judgment at this time. Even if White's initial "take down" of Plaintiff was reasonable, the
statements in Plaintiff's Declaration that Plaintiff was beaten while White knelt on his face, notwithstanding that
Plaintiff was fully restrained, create a fact issue as to whether White's actions were reasonable under the
circumstances. *See* R. Doc. 74-1, ¶ 7.

**IT IS FURTHER ORDERED** that the Clerk of Court shall **STAY** and **ADMINISTRATIVELY CLOSE** this case. The parties shall discuss possible resolution, including the possibility of a settlement conference with Magistrate Judge Bourgeois or Magistrate Judge Johnson. If the case is not amicably resolved, by no later than **June 30, 2022**, the parties shall file a motion to set a new trial date. Any motion for a new trial date shall also include a request to revive White's Motion in Limine to Exclude Testimony and Evidence.[116]

Signed in Baton Rouge, Louisiana, on March 25, 2022.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[116] R. Doc. 90.